Jose **HERNANDEZ**, Petitioner,

v.

Charles **GREINER**, Respondent.

No. 01–CV–2240.

United States District Court,
E.D. New York.

Feb. 24, 2004.

Patrick J. Walsh, Esq., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Petitioner.

Richard A. Brown, Esq., District Attorney, Queens County by John Castellano, Esq., Assistant District Attorney, Kew Gardens, NY, for Respondent.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

Petitioner Jose Hernandez ("Hernandez") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The Court is faced with a core jurisdictional issue: whether it is precluded from considering petitioner's constitutional claims because they were procedurally defaulted due to his assigned counsel's failure to timely perfect his appeal as of right to the State's highest court? The Court denies the writ for lack of jurisdiction, but grants a Certificate of Appealability to the Court of Appeals for the reasons that follow.

## BACKGROUND

On January 24, 1994, Hernandez and a co-defendant were arrested in connection with the armed robberies of two Queens County bars: Five Corners on January 11, 1994 and Bayberry's on January 13, 1994. Although Hernandez initially refused to speak to the police pursuant to his *Miranda* rights, he later confessed to the robberies.

Jury selection began on October 13, 1995. Hernandez, an indigent, was represented by the Legal Aid Society. On the second day of jury selection defense counsel made a *Batson* challenge because the government had used seven out of ten peremptory challenges to excuse African–Americans. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecution offered racially-neutral reasons for exercising four of these challenges; no explanation was provided with respect to the other three. The trial court denied the *Batson* challenge, stating:

> I don't think you have to understand the People's reasoning for excluding anybody peremptorially [sic] as long as it was not a systematic exclusion based on race or some of the other things that *Batson* points out. I don't believe necessarily that they were systematically— this was the intention of the prosecutor that he is systematically excluding from

the jury panel members who are Afro–Americans.

Trial Transcript ("Tr.") at 262.

Defense counsel responded that it was not his burden to show that the exclusion was systematic; rather, he only had to establish a *prima facie* basis for the challenge. The court reiterated that the application was denied and admonished defense counsel not to "waste any more time on that." Tr. at 263.

The trial began on October 18, 1995 in Supreme Court, Queens County. In his opening argument, defense counsel stated that Hernandez had invoked his right to remain silent before he had confessed. Tr. at 490. Counsel sought to use this to attack the voluntariness of Hernandez's inculpatory statements. Tr. at 495. During the trial, the detective who elicited Hernandez's confession acknowledged during direct examination by the prosecutor that Hernandez had indeed initially refused to speak with him after receiving *Miranda* warnings. Tr. at 1019.

Hernandez was convicted of five counts of Robbery in the First Degree, New York Penal Law § 160.15[4], and five counts of Robbery in the Second Degree, New York Penal Law § 160.10[1]. On September 16, 1997, the Appellate Division granted trial counsel's Motion to be Relieved of Assignment, and appointed new counsel to prosecute Hernandez's appeal. *See* Motion for Error *Coram Nobis* ("*Coram Nobis*"), Ex. A. On direct appeal with his newly-assigned counsel, Hernandez claimed, *inter alia,* that he was deprived of his rights under *Batson,* and that the prosecution used his post-arrest silence after the invocation of his *Miranda* rights to impeach him at trial in violation of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

The Appellate Division affirmed Hernandez's conviction with one justice dissenting. The court found the *Batson* claim unpreserved for appellate review, and noted that "[i]n any event, the absence of a complete record of the *voir dire* precludes any finding as to the defendant's establishment of a *prima facie* case of purposeful discrimination." *People v. Hernandez,* 266 A.D.2d 311, 698 N.Y.S.2d 43, 44–45 (2d Dep't 1999). The remaining contentions were found to be "unpreserved for appellate review, and ... without merit." *Id.* at 45. The dissent held that the trial court's finding that "there was not necessarily any purposeful discrimination," and its further direction to defense counsel "not to waste any more time on additional argument," were sufficient to preserve the *Batson* issue for appellate review. *Id.* (Goldstein, J., dissenting). The dissenting justice further noted that there were no race-neutral reasons proffered for the exercise of peremptory challenges by the government with respect to three of the prospective African–American jurors. *Id.* Accordingly, the dissenting justice believed that the *Batson* issue should be remitted to the trial court for a "hearing on the prosecutor's basis for challenging those jurors." *Id.*

Hernandez's appellate attorney timely sought leave to appeal to the New York Court of Appeals from the dissenting justice, pursuant to N.Y.Crim. Proc. Law § 460.20 (2003) and 22 NYCRR § 670.6,[1]

---

1. These provisions allow a litigant seeking review by the Court of Appeals of an Appellate Division order in a criminal case to seek a certificate of appealability from either "(i) a judge of the court of appeals or (ii) a justice of the appellate division of the department which entered the order sought to be appealed." Section 460.20(2)(a). The Second Department requires that a motion for leave to appeal from a justice of the Appellate Division pursuant to § 460.20 be made to a "justice

incorporating by reference all issues raised on direct appeal. Leave to appeal was granted on January 10, 2000. *See People v. Hernandez*, 94 N.Y.2d 927, 708 N.Y.S.2d 367, 729 N.E.2d 1166 (2d Dep't 2000). On January 26, 2000, Hernandez wrote to his appellate lawyer, informing her that he had "received the Decision & Order on Motion Certificate Granting Leave to Appeal to the Court of Appeal[s]," and inquiring how long counsel believed it would take the Court of Appeals to "respond[ ] to this matter." *Coram Nobis*, Ex. F4.[2] On January 31, 2000, Hernandez's counsel wrote back, stating that "[t]he time it takes the Court of Appeals to decide leave applications varies. I cannot tell you when your application will be decided." *Coram Nobis*, Ex. F5. This reply clearly indicates that Hernandez's attorney did not comprehend that leave to appeal had already been granted.

On May 2, 2000, Hernandez's counsel filed a jurisdictional statement pursuant to the Rules of Practice of the Court of Appeals, 22 NYCRR § 500.2.[3] *See* Declaration of Patrick J. Walsh ("Walsh Decl."), Ex. B. In a letter accompanying the statement, appellate counsel stated that the reason for the late filing was that she had "never received a copy [of the order granting leave to appeal] and was unaware that Justice Goldstein granted leave." [4] Walsh Decl., Ex. A. Since the jurisdictional statement was submitted more than eighty days after leave to appeal had been granted, and the Court of Appeals had no prior notice of the pending appeal, the Clerk of the Court of Appeals entered an order on May 9, 2000, pursuant to 22 NYCRR § 500.9(a), dismissing the appeal "for want of prosecution." [5] It was reported in the official reports as being "dismissed pursuant to rules of practice of Court of Appeals or on consent." *People v. Hernandez*, 95 N.Y.2d 792, 711 N.Y.S.2d 158, 733 N.E.2d 230 (2000).

On July 14, 2000, counsel filed a motion to vacate the order of dismissal. In an affirmation in support of the motion, coun-

who was a member of the panel which decided the matter." NYCRR § 670.6(d).

2. Also attached to Hernandez's *coram nobis* motion was extensive documentation indicating that Hernandez had long been dissatisfied with his appointed appellate counsel, including a motion to the Appellate Division for assignment of new counsel and a formal grievance filed with the New York State bar. *See Coram Nobis* Exs. C3; C5.

3. "Within 10 days from the time the appeal is taken, appellant shall file with the clerk two copies of a [jurisdictional] statement." 22 NYCRR § 500.2(a). In addition to including basic information about the case, this statement must also include a copy of the order granting leave to appeal and the decision of the Appellate Division. *See id.*

4. The record does not indicate how appellate counsel became aware that leave to appeal had been granted.

5. 22 NYCRR § 500.9(a) provides that if the Court of Appeals "had no notice from any source of a pending appeal and 80 days pass from the date it was taken without [the filing and service of the record and appellant's brief], then upon receipt of notice of the pendency of the appeal the clerk shall enter an order dismissing the appeal for failure of appellant to proceed or file papers." Subdivision (b) of § 500.9 provides that if the Court of Appeals has notice of the appeal within the 80 days but the record and appellant's brief were not filed and served by the end of the 80 day period, "the court will issue to appellant by regular mail to counsel of record a notice that such service and filing be made within 20 days after the date of the notice." It further provides for an extension of time for perfecting the appeal beyond this 20 day period if, within that period, the extension is sought "on good cause shown." Notably, no provision is made for the late service and filing by the appellant of the record and brief if the jurisdictional statement had not been filed within the 80 day period.

sel again proffered as her excuse for failing to make any effort to perfect the appeal within the 80 day time period under Rule 500.9(a), that "she was never notified [of the certificate for leave to appeal] by the Appellate Division." Walsh Decl., Ex. C. She attached a copy of the opinions of the Appellate Division to her affirmation. The motion was summarily denied. *See People v. Hernandez*, 95 N.Y.2d 885, 715 N.Y.S.2d 375, 738 N.E.2d 779 (2000) ("Motion to vacate this Court's May 9, 2000 order of dismissal denied."). Filing *pro se,* Hernandez then sought a writ of error *coram nobis* in the Appellate Division, alleging ineffective assistance of appellate counsel for failing to perfect his appeal before the Court of Appeals. The Appellate Division denied the writ, stating only that Hernandez "has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Hernandez*, 281 A.D.2d 560, 721 N.Y.S.2d 842, 842 (2d Dep't 2001).

Continuing *pro se,* Hernandez filed the present *habeas corpus* petition on April 6, 2001, raising both the *Batson* and *Doyle* issues. By order dated July 15, 2002, the Court assigned counsel. In his submissions, counsel advances compelling arguments in support of petitioner's *Batson* claim, and argues that petitioner should not be procedurally barred from presenting this claim because it was properly exhausted in the state courts; alternatively, if the claim be deemed procedurally barred, the default was due to the ineffectiveness of Hernandez's assigned appellate

counsel in failing to timely file the jurisdictional statement.[6]

Respondent does not address the merits of the *Batson* issue. He argues that Hernandez was procedurally barred from presenting his *Batson* claim in the State's highest court, and that the Court is without jurisdiction to relieve him from the bar based upon counsel's ineffectiveness in failing to perfect the appeal because no constitutional right to counsel attached beyond petitioner's first appeal; alternatively, respondent argues that the Court cannot, in any event, consider the merits of the *Batson* issue because the Appellate Division majority also determined that it was procedurally barred as unpreserved for appellate review.[7]

## DISCUSSION

It is, of course, intuitively troublesome to fathom that the failure of Hernandez's assigned state appellate counsel to timely attend to the ministerial requirement of the filing of the jurisdictional statement, through no fault of Hernandez, would preclude this Court from passing on the federal *Batson* claim that triggered the grant of leave to appeal to the State's high court. Indeed, the Supreme Court has held that the failure of counsel to file a notice of appeal, knowing that his client wishes him to do so, constitutes constitutionally ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Roe v. Flores–Ortega*, 528 U.S. 470, 484, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("we hold that when counsel's constitution-

---

6. Assigned counsel has not pursued the *Doyle* issue. This decision was entirely appropriate since the Court's review of the record finds the issue to be without merit; furthermore, unlike *Batson* violations, which are structural, *see Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir.1998), *Doyle* errors are subject to harmless error analysis. Even if *Doyle* were

violated, it would not survive such analysis in light of the overwhelming evidence of petitioner's guilt.

7. In light of the Court's denial of the writ for lack of jurisdiction, it need not address this alternative argument.

ally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal"). Nonetheless, Hernandez faces a number of barriers in his effort to seek federal *habeas* review of his *Batson* claim.

## I.

 Initially, as *Coleman v. Thompson* teaches, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Hernandez claims that the procedural bar rule does not here apply because he has properly exhausted his *Batson* claim before the state's highest court. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of state court remedies); *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). He contends that his assigned counsel advanced the merits of the *Batson* claim in her motion papers to vacate the procedural default,[8] and the failure of the Court of Appeals to expressly rest its decision on the underlying procedural default satisfies the exhaustion requirement.

 The fallacy of petitioner's argument is that there is no question but that the dismissal of the appeal was "pursuant to rules of practice of Court of Appeals." *Hernandez,* 95 N.Y.2d 792, 711 N.Y.S.2d 158, 733 N.E.2d 230. The requirement of notifying the Court of Appeals within 80 days of the taking of an appeal under § 500.9(a) of its rules is an adequate and independent state ground constituting a procedural bar preventing federal *habeas* review, *see Coleman,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (failure to timely file notice of appeal constituted adequate and independent state grounds for dismissal of appeal). Therefore the summary refusal of the Court of Appeals to relieve petitioner of this default cannot be viewed as a decision on the *Batson* claim, even where, as here, a copy of the opinions of the Appellate Division were submitted in support of the motion to vacate; rather, it can only be viewed as a decision by the Court of Appeals adhering to its dismissal of the appeal because of the procedural default. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (rejecting argument that procedural bar does not apply "to an unexplained order leaving in effect a decision (or, in the case of *habeas,* the consequences of a decision) that expressly relies upon procedural bar" since "[t]he essence of unexplained orders is that they say nothing"). *See also Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993) (affirmance of conviction without opinion does not constitute "good reason" to believe state appellate court looked past a procedural bar to reach the merits).

There is another exhaustion issue that needs to be addressed. In *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct.

---

**8.** The only apparent possible basis for petitioner's belief that the merits were before the Court of Appeals is that the opinions of the Appellate Division were attached to the motion to vacate the default.

1587, 146 L.Ed.2d 518 (2000), the Supreme Court held that an ineffective assistance claim must itself be exhausted. Although Hernandez sought redress for counsel's ineffectiveness by writ of error *coram nobis* in the Appellate Division, the State Court of Appeals, while recognizing the viability of *coram nobis* as a basis for a collateral attack challenging appellate counsel's effectiveness, has held that such relief must be sought "in the appellate tribunal which considered the primary appeal on which counsel was allegedly deficient." *People v. Bachert,* 69 N.Y.2d 593, 600, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987).

Here, counsel was not deficient in the Appellate Division; rather, her deficiency was in failing to comply with the rules of the Court of Appeals. Although the State's high court in *Bachert* recognized the availability of *coram nobis* as a remedy for ineffective assistance of counsel in the intermediate appellate courts, it has ruled that "[t]here is no authority for initiating a writ of error *coram nobis* in the Court of Appeals." *People v. Gibbs,* 85 N.Y.2d 1030, 1030, 631 N.Y.S.2d 285, 655 N.E.2d 398 (1995).[9] Thus, in order to determine whether *Edwards* exhaustion has been satisfied, the Court would have to decide whether Hernandez was not required to exhaust his ineffective assistance of counsel claim because of "an absence of available state corrective process." Section 2254(B)(1)(b)(i). However, if the Court has no jurisdiction to decide the ineffectiveness claim, it cannot address the *Edwards* exhaustion issue.

## II.

■ Petitioner claims that the ineffectiveness of his counsel in failing to notify the State Court of Appeals of the pendency of the appeal within the 80 day time frame set forth in § 500.9(a) of its rules constituted cause and prejudice to overcome his procedural default of his *Batson* claim.[10] The Court's jurisdiction in a § 2254 proceeding to decide the cause and prejudice issues turns on whether petitioner had a constitutionally protected right to counsel on his appeal to the Court of Appeals, for there can be no federal *habeas* review of ineffective assistance of counsel claims in the absence of a constitutional entitlement to counsel. *See Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982).

■ It is firmly established Supreme Court law that there is no constitutional right to counsel to pursue a *discretionary* appeal subsequent to an initial appeal as of right. *See Chalk v. Kuhlmann,* 311 F.3d 525, 528 (2d Cir.2002) (citing *Ross v. Moffitt,* 417 U.S. 600, 610–11, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), *Wainwright,* 455 U.S. at 587–88, 102 S.Ct. 1300, and *Coleman,* 501 U.S. at 756–57, 111 S.Ct. 2546). As an application of this principle, *Chalk* relies on *Wainwright,* noting that the Supreme Court there held "that a writ of habeas corpus cannot be premised on a claim of ineffective assistance of counsel based on counsel's failure to file a timely application for leave for a discretionary appeal." *Chalk,* 311 F.3d at 528. Drawing from these high court precedents, the Second

---

**9.** By L.2002, ch. 498 (enacted September 17, 2002), leave to appeal can now be pursued for review by the Court of Appeals of an intermediate appellate court order granting or denying *coram nobis* relief on the ground of ineffective assistance of appellate counsel.

**10.** Hernandez does not claim that he is innocent; thus, he does not contend that the failure to relieve him of his procedural default would constitute a miscarriage of justice, which requires an assertion of actual innocence. *See Coleman,* 501 U.S. at 748, 111 S.Ct. 2546; *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003).

Circuit in *Chalk* held that there was no constitutional right to counsel on an application for leave to appeal to the New York State Court of Appeals; hence, federal *habeas* review was not available to pass upon issues which were not preserved in the leave application because of alleged ineffective assistance of counsel. *See id.* at 526 ("We hold that because the proceedings as to which counsel rendered assertedly ineffective assistance involved a discretionary appeal subsequent to the first appeal as of right, petitioner did not have a constitutional right to counsel, so that the question whether counsel's performance violated minimal constitutional standards is moot.").

The court in *Chalk* need not have gone further, but it also stated "that the right to counsel extends only to a first appeal as of right." *Id.* at 528. It cited, as its sole authority for this broad proposition, *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), where the Supreme Court did indeed state that the right to counsel "is limited to the first appeal as of right." *Id.* This limitation on the right to counsel was re-articulated in *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). Given the broad reach of this language, which on its face would bar a constitutional right to counsel even if appeals subsequent to the first appeal were as of right, rather than discretionary, dismissal of Hernandez's *habeas* petition is indicated. However, a careful reading of *Evitts* and *Finley*, and the cases they rely on for their sweeping pronouncement, reveals that they concerned discretionary appeals only, not second appeals as of right.

The precise issue in *Evitts* was whether the Due Process Clause of the Fourteenth Amendment guaranteed a criminal defen-dant the effective assistance of counsel on his initial appeal, which lied as of right, in light of the holding in *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), that the Fourteenth Amendment guarantees a criminal defendant the right to counsel for such appeal. Counsel in *Evitts* failed to timely perfect the defendant's as of right appeal to the intermediate appellate court. The Supreme Court held that the right to the effective assistance of counsel was constitutionally required, reasoning that although the Constitution "does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors[,] ... if a State has created appellate courts as 'an integral part of the ... system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts*, 469 U.S. at 393, 105 S.Ct. 830 (citation omitted).

Since all that *Evitts* entailed was the first appeal, the Supreme Court was not presented with the issue of whether there is a constitutional right to counsel where a second appeal lied as of right. Moreover, the sole support for its passing comment that the right to counsel was limited to first appeals as of right was its citation to *Ross*, which simply does not stand for that proposition. *See Evitts*, 469 U.S. at 394, 105 S.Ct. 830 (citing *Ross* ). To the contrary, the issues in *Ross* were whether *Douglas* "should be extended to require counsel for discretionary state appeals and for applications for review in [the Supreme] Court." *Ross*, 417 U.S. at 602, 94 S.Ct. 2437. In answering these questions in the negative, the Supreme Court took pains to first examine North Carolina's multitiered appellate system, noting that in criminal cases an appeal as of right lied directly to that State's Supreme Court, the

State's highest court, in all cases which involved a sentence of death or life imprisonment, while an appeal as of right in all other criminal cases lied to the State's intermediate appellate court, the Court of Appeals. Appeals as of right from the Court of Appeals to the State Supreme Court could be taken if a substantial federal or state constitutional question was involved, or if there were a dissent; in all other cases further direct review was the province of the exercise of a limited discretion by the State's Supreme Court. It was only the discretionary prong of the State appellate process and the discretionary nature of *certiorari* applications to the United States Supreme Court that were before the Court in *Ross*. Thus, neither *Ross* nor *Evitts* presented for adjudication the issue of whether an indigent was entitled to assigned counsel for second appeals as of right.

Notably, *Evitts* rejected the argument that the right to counsel did not attach to an appeal since "a State need not provide a system of appellate review as of right at all." *Id.* at 400, 105 S.Ct. 830. In doing so, it invoked the constitutional principle that "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause." *Id.* at 401, 105 S.Ct. 830. In support of this constitutional proposition, the Court gave as an example the holding in *Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that "although a State may choose whether it will institute any given welfare program, it must operate whatever programs it does establish subject to the protections of the Due Process Clause,". *id.*, and referenced, as a further example, the line of cases holding that although "a State has great discretion in setting policies governing parole decisions ... it must none-

theless make those decisions in accord with the Due Process Clause." *Id.* (citing, *inter alia, Morrissey v. Brewer*, 408 U.S. 471, 481–484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). *Evitts* recognizes, therefore, the principle that although there is no constitutional right to compel a state to exercise a discretionary power, once it chooses to do so, due process rights invariably are implicated.

As for *Finley*, it merely held that a criminal defendant had no equal protection or due process right to counsel in collateral postconviction proceedings. *See* 481 U.S. at 555, 107 S.Ct. 1990 ("We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion."). The Court reasoned: "Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction." *Id.* at 556–57, 107 S.Ct. 1990 (internal citation omitted). The Court contrasted the case before it to the prisoner in *Evitts* "who was actually deprived of a state-created right to appeal." *Id.* at 558, 107 S.Ct. 1990. As in *Ross* and *Evitts*, the issue in *Finley* did not entail the right to counsel for appeals as of right. Notably, in *Finley*, the Court did not cite any authority for its gratuitous comment that its cases "establish that the right to appointed counsel extends to the first appeal, and no further," *id.* at 555, 107 S.Ct. 1990, relying simply on the holdings in *Wainwright* and *Ross* rejecting the right to counsel on discretionary appeals. *See id.*

226

Moreover, the Court in *Wainwright* noted that "[r]espondent does not contest the finding of the District Court that he had no absolute right to appeal his convictions to the Florida Supreme Court," 455 U.S. at 587, 102 S.Ct. 1300; accordingly, as it acknowledged, "we need not determine the extent of the right to counsel in such a case." *Id.* at 588 n. 3. Certainly this reservation supports the notion that the Supreme Court has never addressed the issue of the right to counsel in all appeals as of right.

Finally, in *Coleman,* the Court held that attorney error leading to the default of a federal *habeas* petitioner's claims in state court on a state collateral determination could not constitute cause to excuse the default under federal *habeas* review since under *Ross* and *Finley* "a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review." 501 U.S. at 756, 111 S.Ct. 2546. Once again, the issue of entitlement to counsel for all appeals as of right was not before the Court.

In sum, neither the Supreme Court, nor the Second Circuit, has ever been presented with the issue of whether the right to counsel attaches to all appeals as of right on direct review of a criminal conviction, a conclusion reinforced by the high court's acknowledgment in *Wainwright* that it did not need to resolve that issue. In a similar vein, the Court in *Douglas* recognized the distinction between discretionary and mandatory review beyond the first stage in the appellate process, noting that it was neither deciding whether counsel need be appointed to pursue a discretionary appeal subsequent to the first appeal as of right (the issue decided in *Ross* ), nor deciding "whether counsel must be appointed for an indigent seeking review of an appellate affirmance of his conviction ... by appeal as of right." 372 U.S. at 356, 83 S.Ct. 814.

The Court's research has disclosed only one case directly presenting this issue, *State v. Buell,* 70 Ohio St.3d 1211, 639 N.E.2d 110 (1994), a state court case which simply cited to and relied upon the *dicta* of *Finley* and *Evitts.*

### III.

■■ It is true, in the present case, that the application for leave to appeal was a discretionary application; therefore, under *Ross* and its progeny, no constitutional right to counsel could then have attached. But once the State, in the exercise of its discretion, granted leave, the defendant had the absolute right under New York law to have his appeal heard by the State's high court. The rationales articulated in *Ross* for not extending the right to counsel to seek permission to appeal are not quite the same once leave has been granted. Indeed, in *Evitts,* the Court recognized that *Ross* "held [that] the considerations governing a discretionary appeal are somewhat different" than the appeal as of right. *Evitts,* 469 U.S. at 397 n. 7, 105 S.Ct. 830. As explained in *Ross,* these "considerations" are twofold. First, the value of counsel for the purpose of making a discretionary leave application is minimal, since the defendant "will have, at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the [intermediate appellate court] setting forth his claims of error, and in many cases an opinion of [that court] disposing of his case." *Ross,* 417 U.S. at 615, 94 S.Ct. 2437. Consequently, "[t]hese materials, supplemented by whatever submissions [defendant] may make *pro se,* would appear to provide ... an adequate basis for [the] decision to grant or deny review." *Id.* Second, the "function served by discretionary review" is decidedly different since, similar to *certiorari* applications to the United States Supreme Court, the exercise of discretion "depends on numerous

factors other than the perceived correctness of the judgment" sought to be reviewed. *Id.* at 617, 94 S.Ct. 2437. For these two reasons, the "relative handicap" of being bereft of counsel to assist in a discretionary application is "far less than the handicap borne by the indigent defendant denied counsel on his initial appeal as of right." *Id.* at 616, 94 S.Ct. 2437.

These reasons lose their vitality once leave to appeal is granted. Clearly, the correctness of the judgment of conviction is then squarely before the State's high court, and the State, in granting leave, has made a reasoned decision that the appeal is potentially meritorious. This State action, in keeping with the principles underlying the Supreme Court's invocation of *Goldberg* and *Morrissey* in *Evitts,* places due process concerns on a different footing, and the failure of counsel to allow an appeal to be heard by not performing the "purely ministerial task" of filing [the equivalent of] a notice of appeal, *Roe,* 528 U.S. at 477, 120 S.Ct. 1029, "constitutes the forfeiture of a proceeding" to which the petitioner "had a right." *Id.* at 483, 120 S.Ct. 1029.[11]

Moreover, given the legal significance of criminal cases deemed worthy of consideration by the State's high court, as reflected by the State's decision to grant leave,[12] the need for the effective assistance of appellate counsel is heightened. Foremost is the opportunity for oral advocacy. Rather than simply submitting written papers in support of the leave application to a single judge, counsel now will undoubtedly be permitted to orally argue the merits of the appeal before the full high court bench. The value of such advocacy cannot be underestimated; indeed, it is an essential facet of the appellate process, and one that should not be relegated to a *pro se* appellant. *See* Myron H. Bright, *The Power of the Spoken Word: In Defense of Oral Argument,* 72 Iowa L.Rev. 35 (1986). As the Sixth Circuit, in commenting on the discussion in its Practice Manual of "The Importance of Oral Argument," has cogently explained:

> The importance of oral argument is emphasized by the fact that, in a majority of cases, the decision is ultimately reached in accordance with the impression that the judges have as they leave the bench. While it is quite true that the impression after oral argument derives from the reading of the briefs as well as from the argument, it is also true that the impression from reading the briefs may be changed or modified by the oral argument. Although the oral argument and brief complement each other, each serves a different purpose. The oral argument should be something in the nature of a tour de force designed to persuade the judges that fair play and precedent support the position of the advocate.

---

11. Here, the purely ministerial task was the filing of the jurisdictional statement within 80 days from the granting of leave to appeal. While extensions for the service and filing by an appellant of the record on appeal and the appellant's brief may be granted by the Court of Appeals for good cause if the jurisdictional statement has been filed within the 80 day period, *see* 22 NYCRR § 500.9(a)-(b), there is no provision for such extensions if the jurisdictional statement has not been so filed. *See* n. 5, *supra.*

12. The importance of the criminal cases for which leave has been granted is underscored by the limited number of successful leave applications. For example, only 57 out of 2,982 leave applications were granted by the Judges of the Court of Appeals in 1998; only 44 out of 2,799 were granted in 1999. *See* Stuart M. Cohen, Clerk of the Court, *Criminal Leave Applications,* (December 2, 2002), *available at* **http://www.courts.state.ny.us/ctapps/claotl.htm.**

*Central Distributors of Beer, Inc. v. Conn.,* 5 F.3d 181, 185 (6th Cir.1993).

## IV.

▪ The above analysis suggests the precise threshold question in the present case: Whether a federal district court in a *habeas* proceeding under § 2254 has jurisdiction to relieve a criminal appellant from his counsel's procedural default in failing to timely attend to a ministerial filing requirement to preserve an as of right appeal to the State's highest court after leave to appeal was granted by the State? [13]

▪ Because the language of the Supreme Court in *Evitts* and *Finley,* as well as its incantation by the Second Circuit in *Chalk,* barring the constitutional right to counsel on appeal beyond the first appeal as of right, sweeps so broadly, the Court believes that it is best left to the Second Circuit to determine whether to follow that *dicta.* Accordingly, the Court will deny the writ but certify the above question to the circuit court. It notes that the Second Circuit has recognized "that a distinction should be drawn between 'obiter dictum,' which constitutes an aside or an unnecessary extension of comments, and considered or 'judicial dictum' ... to guide the future conduct of inferior courts." *United States v. Bell,* 524 F.2d 202, 206 (2d Cir. 1975). In making this assessment, the court in *Bell* recognized the wisdom of Chief Justice Marshall's caveat in *Cohens*

*v. Virginia,* 19 U.S. (6 Wheat.) 264, 398, 5 L.Ed. 257 (1821):

> It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

524 F.2d at 206 n. 4.

These observations resonate in the present case since the *dicta* did not consider or investigate the differences between the entitlement to and value of counsel for state-created appeals as of right beyond the first appeal as of right, as contrasted to the entitlement to and value of counsel in the course of seeking permission to appeal.

## CONCLUSION

▪ The petition is denied; however, the Court issues a Certificate of Appealability under 28 U.S.C. § 2253, certifying the following question: Whether a federal district court in a *habeas* proceeding under

---

13. Although it is troubling that since an indigent is dependent on the State assigning competent counsel, *see Evitts,* 469 U.S. at 404, 105 S.Ct. 830 ("a State must supply indigent criminal appellants with attorneys who can provide specified types of assistance-that is, that such appellants have a right to effective assistance of counsel"), the failure of the State to appoint an attorney who can comply with a simple ministerial chore to prevent the forfeiture of an entire appellate proceeding would seemingly constitute a State-caused deprivation "imped[ing] ... compl[iance] with the State's procedural rules," *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546, consideration of this issue would appear to be foreclosed in light of the Supreme Court's holding in *Cuyler v. Sullivan,* 446 U.S. 335, 344-45, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) that there is "no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers."

§ 2254 has jurisdiction to relieve a criminal appellant from his counsel's procedural default in failing to timely attend to a ministerial filing requirement to preserve an as of right appeal to the State's highest court after leave to appeal has been granted by the State? [14]

**SO ORDERED.**

---

14. With the grant of this certificate, it is incumbent on petitioner's counsel to duly file a notice of appeal; thereupon, "[t]he district clerk must send the certificate ... to the Court of Appeals with the notice of appeal and the file of the district-court proceedings." Fed. R.App. P 22(b)(1). If the Court of Appeals determines that the District Court should exercise jurisdiction over the *habeas* petition, the District Court would then have to address the *Edwards* exhaustion issue and, if it deems this exhaustion issue to present no obstacle, it would have to determine whether the prejudice prong of *Strickland* would be satisfied, *see Roe*, 528 U.S. at 483, 120 S.Ct. 1029 (forfeiture of initial appeal by reason of counsel's ineffectiveness in failing to file notice of appeal which defendant wanted and to which he had a right "demand[s] a presumption of prejudice") and, if so, address the *Batson* issue.